IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WANDA BOSICH,                              )
                                          )
            Plaintiff,                     )        Civil Action No. 08-783
                                          )
      v.                                   )
                                          )
MICHAEL J. ASTRUE, COMMISSIONER            )
OF SOCIAL SECURITY                         )
            Defendant.                     )

AMBROSE, Chief District Judge.

**OPINION**

### I.    Introduction

Before the Court for consideration are the parties' Cross-Motions for Summary Judgment.

(Docket No. 9; Docket No. 11). Upon analysis and consideration of the parties' submissions, and

for the following reasons, Defendant's Motion for Summary Judgment (Docket No. 11) is granted

and Plaintiff's Motion for Summary Judgment (Docket No. 9) is denied.

### II.    Procedural History

Wanda Bosich ("Plaintiff") protectively filed a claim for Supplemental Security Income

("SSI") under Title XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 1381, et. seq. and

Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"), 42 U.S.C.

§§ 423, et. seq. on December 31, 1982, alleging a disability due to breast cancer, continued cancer

treatments, kidney problems, asthma and migraines, with an alleged onset date of December 31,

1982. (R. at 101). Plaintiff's claim was initially denied on August 30, 2004. (R. at 56). A timely request for a hearing was filed by Plaintiff. (R. at 65). After being rescheduled twice so that Plaintiff's counsel could obtain updated medical records, a hearing was held before the ALJ on August 2, 2006. (R. at 929). Plaintiff was represented by counsel at the hearing and testified at the hearing. (R. at 929-942). Additionally, a vocational expert ("VE") testified regarding the availability of jobs in the national economy for an individual with Plaintiff's limitations and an ability to perform light work. (R. at 933-934).

By decision dated December 29, 2006, the ALJ determined that Plaintiff is not disabled under §§ 216(I) or 223(d) of the SSA. (R. at 39). Additionally, the ALJ found that Plaintiff has the following severe impairments: degenerative arthritis and chondromalacia of the right knee with residuals of multiple arthroscopic surgical procedures, and asthma and allergic rhinitis. (R. at 23). However, the ALJ determined that none of the impairments or combination of impairments meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appdx. 1. (R. at 29). Additionally, the ALJ determined that Plaintiff has the residual functional capacity to return to past relevant work as a sewing machine operator under Title II, but does not have past relevant work for purposes of Title XVI. (R. at 36). He also determined that Plaintiff has the residual functional capacity to perform light work, which exists in significant numbers in the national economy. (R. at 36-37).

Plaintiff filed a timely review of the ALJ's determination, (R. at 15), which was denied by the Appeals Council on December 14, 2007. (R. at 3). Having exhausted her administrative remedies, Plaintiff filed the instant action under 42 U.S.C. §405(g) on June 10, 2008, seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or

2

"Defendant"), denying her DIB and SSI applications. (Docket No. 4).

### III.    Standard of Review

When reviewing a decision denying DIB and SSI, the District Court's role is limited to determining whether substantial evidence exists in the record to support the ALJ's findings of fact. Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002). Substantial evidence is defined as "more than mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Pareles, 402 U.S 389, 401 (1971)). Additionally, if the ALJ's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 205(g); Richardson, 402 U.S. at 390. A district court cannot conduct a *de novo* review of the Commissioner's decision nor re-weigh evidence of record. Palmer v. Apfel, 995 F.Supp. 549, 552 (E.D. Pa. 1998). Rather, so long as the ALJ's decision is supported by substantial evidence and decided according to the correct legal standards, the decision will not be reversed. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. See 5 U.S.C. § 706.

### IV.    Discussion

Plaintiff makes several arguments in support of her motion for summary judgment. Plaintiff first argues that the ALJ erred in rejecting Plaintiff's subjective complaints as not entirely credible. (Docket No. 10 at 10). Plaintiff further argues that the ALJ failed to properly evaluate the opinions of Plaintiff's treating and examining physicians. (Docket No. 10 at 15). According to Plaintiff, the ALJ also erred in determining that several of Plaintiff's impairments are "non-severe." Additionally,

3

Plaintiff argues that the ALJ erred in finding that the "cumulative effects of [P]laintiff's impairments" do not meet or equal one of the listed impairments, (Docket No. 10 at 18), and that substantial evidence does not support the ALJ's determination that Plaintiff has the residual functional capacity to perform light work. (Docket No. 10 at 19-20).

In response to Plaintiff's arguments, Defendant argues that substantial evidence supports the ALJ's determination that Plaintiff's subjective complaints are not entirely credible. (Docket No. 12 at 12). Furthermore, Defendant argues that substantial evidence supports the ALJ's determination that Plaintiff's impairments do not meet or medically equal one of the Listed impairments. (Docket No. 12 at 16). Moreover, Defendant argues that substantial evidence supports the ALJ's finding regarding Plaintiff's residual functional capacity. (Docket No. 12 at 18).

Under the SSA, the term "disability" is defined as the:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months...

42 U.S.C. §§416(i)(1)(A); 423(d)(1)(A); 20 C.F.R. 404.1505. A person is unable to engage in substantial activity when she:

is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for [her], or whether [s]he would be hired if [s]he applied for work. ...

42 U.S.C. §423(d)(2)(A).

In determining whether a claimant is disabled under the SSA, a five-step sequential

4

evaluation process must be applied. 20 C.F.R. §404.1520. See McCrea v. Commissioner of Social Security, 370 F.3d 357, 360 (3d Cir. 2004). The evaluation process proceeds as follows. At step one, the Commissioner must determine whether the claimant is engaged in substantial gainful activity for the relevant time periods; if not, the process proceeds to step two. 20 C.F.R. §404.1520(a)4(i). At step two, the Commissioner must determine whether the claimant has a severe impairment. §404.1520(a)(4)(ii). If the Commissioner determines that the claimant has a severe impairment, it must then determine whether that impairment meets or equals the criteria of an impairment listed in 20 C.F.R., part 404, subpart p, Appx. 1. §404.1520(a)(4)(iii). If the claimant does not have an impairment which meets or equals the criteria, at step four the Commissioner must determine whether the claimant's impairment or impairments prevent her from performing her past relevant work. §404.1520(a)(4)(iv). If so, the Commissioner must determine, at step five, whether the claimant can perform other work which exists in the national economy, considering her residual functional capacity and age, education and work experience. §404.1520(a)(4)(v). See also McCrea, 370 F.3d at 360; Sykes v. Apfel, 228 F.3d 269, 262-63 (3d Cir. 2000).

### 1. Whether the ALJ Erred in Determining that Plaintiff's Subjective Complaints Are Not Entirely Credible

In regard to the ALJ's credibility determination, Plaintiff argues that the ALJ failed to provide sufficient reason for determining that Plaintiff's complaints are not entirely credible. (Docket No. 10 at 10). Plaintiff further argues that Plaintiff's testimony regarding her daily living activities is inconsistent with the medical evidence of record. (Id).

"The authority to evaluate the credibility of [the claimant] concerning pain and other

subjective complaints is reserved for the ALJ." Gilmore v. Barnhart, 356 F.Supp. 2d 509, 513 (3d Cir. 2005) (citations omitted). While the ALJ must give a claimant's subjective complaints "serious consideration," Powell v. Barnhart, 437 F.Supp. 2d 340, 342 (E.D. Pa. 2006) (citing Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002)), "the ALJ may reject a claimant's complaints if he does not find them credible." Id. (citing Schaudeck v. Commissioner of Social Security, 181 F.3d 429, 433 (3d Cir. 1999)); Hirschfield v. Apfel, 159 F.Supp. 2d 802, 811 (E.D. Pa. 2001)(citing Capoferri v. Harris, 501 F.Supp. 32, 37 (E.D. Pa. 1980), aff'd 649 F.2d 858 (3d Cir. 1981); Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir. 1974), cert. denied, 420 U.S. 931 (1975)) (holding that the ALJ may reject a claimant's subjective complaints of "disabling pain if he affirmatively addresses the claim in his decision, specifies the reason for rejecting it, and has support for his conclusion in the record"). Moreover, "if supported by substantial evidence, the ALJ's credibility findings may not be disturbed upon appeal." Hirschfield, 159 F.Supp. 2d at 811 (citing Van Horn v. Schweiker, 717 F.2d 871, 871 (3d Cir.1983); Smith v. Califano, 637 F.2d 968, 972 (3d Cir.1981); Baerga, 500 F.2d at 312).

Plaintiff claims that, as a result of her impairments, she is unable to work. (R. at 120). In addition, she claims that she can carry only two to three pounds, suffers severe fatigue and experiences pain on a daily basis. (R. at 120-123). Plaintiff also reported that pain affects her ability to concentrate, that she suffers from tremors in her hands and has a bladder problem which requires her to use the bathroom every fifteen minutes. (R. at 908).

In finding the Plaintiff's subjective complaints not entirely credible, the ALJ did a thorough examination of Plaintiff's subjective complaints compared to both the medical and non-medical evidence of record. The ALJ made the following findings regarding Plaintiff's subjective

6

complaints. The ALJ found that, while the claimant's impairments could reasonably be expected to produce the alleged symptoms, her statements regarding the intensity, duration and limiting effects of these symptoms were not entirely credible. (R. at 31). Specifically, the ALJ addressed Plaintiff's claims that the combination of her breathing problems, the pain in her right knee and left great toe, swelling in her left leg and tremors make it difficult for her to perform heavy lifting or carrying and prolonged standing. (Id). Moreover, the ALJ considered Plaintiff's complaints of fatigue and bladder control problems, in addition to her claims that she experiences side effects from her various medications, including constipation, blurred vision and reduced reflexes. (Id).

The ALJ found Plaintiff's claims that these symptoms are totally debilitating to be inconsistent with Plaintiff's own reports of her daily activity level. Specifically, the ALJ determined that Plaintiff's reported activities including caring for her personal needs, watching television four hours per day, reading magazines, performing household chores such as laundry, cleaning and grocery shopping are inconsistent with her claim that her symptoms are completely debilitating. (R. at 31). The ALJ further considered Plaintiff's report that she attends church, dines out one time a year, receives visitors, visits her boyfriend's family and engages in hobbies such as movies and cross-word puzzles. (Id). He also discussed her report that she cared for her husband in September 2005, could drive in January 2006 and takes out the trash. (Id). The ALJ considered all of these self-reports of activity, compared them to Plaintiff's subjective complaints and found them to be inconsistent. (Id.) The ALJ also found particularly significant the fact that Plaintiff's work record indicates that she has had consistent earnings through her alleged onset date. (R. at 34).

In addition to Plaintiff's subjective complaints, the ALJ considered the objective medical evidence and determined it to be inconsistent with said complaints. (R. at 31). Specifically, the ALJ

7

evaluated the objective findings of Dr. Barua, which indicate one instance of atrophy in Plaintiff's quadracep, as well as some swelling and somewhat decreased range of motion in the knee immediately after operations in May and June 2006. (Id.) The ALJ also considered the physical examination by Dr. Kucera, which revealed some coarse breath sounds. (Id). The ALJ noted the findings of Dr. Barua in June 2006 that Plaintiff was able to flex her right knee and that she needed to do more exercise. (R. at 31-32). Additionally, the ALJ found that there is no evidence of significant respiratory abnormalities or cardiopulmonary disease. (R. at 32). Moreover, the ALJ noted that no medical source has reported any signs of significant fatigue. (Id).

In his determination, the ALJ also compared Plaintiff's specific subjective complaints to the medical evidence. For example, the ALJ compared Plaintiff's complaints of chronic, reduced range of motion in both hands and tremor to the physical examination performed by Dr. Catino in March 2005 (R. at 33). The ALJ found Plaintiff's complaint inconsistent with Dr. Catino's findings in regard to Plaintiff's strength, flexors and sensory examination. In addition, the ALJ noted medical evidence provided by Dr. Ong, which indicated that Plaintiff had only mild tremors and no focal deficits. (Id).

The ALJ also compared Plaintiff's complaints of cardiac impairment to the medical records provided by Dr. Catalano from December 2005 and Dr. Was from June 2006. The ALJ found that these medical records indicate that Plaintiff's complaints of breathing difficulties are not entirely consistent with the records, which indicate no cardiopulmonary disease, a regular heart rate and no edema of the extremities. (Id).

In determining that Plaintiff's subjective complaints are inconsistent with the medical evidence, the ALJ also specifically compared Plaintiff's complaints of swelling and discomfort in her left lower extremity to the objective findings of Dr. Pifferetti, after a June 2004 physical exam.

8

(R. at 33). The ALJ noted that Dr. Pifferetti found a full range of motion and no deformity in the left leg and ordered an ultrasound study, which was normal. (Id). The ALJ also noted that a May 2005 report by Dr. Barua indicated that Plaintiff had normal circulation in the left leg. A June 2006 report by Dr. Waas indicated that there was no edema of the extremities or calf tenderness. (Id). The ALJ noted that Plaintiff's complaints of swelling appear to be adequately controlled with treatment. (Id).

Finally, the ALJ compared Plaintiff's complaints regarding her kidney problems with the medical evidence of record. (R. at 33-34). Specifically, the ALJ considered Plaintiff's complaint that she uses the bathroom three to four times per hour and found this inconsistent with the opinion of Dr. Gebrosky that Plaintiff's urinanlysis looked fine and that Plaintiff's overactive bladder is well controlled with medication. (R. at 33). Additionally, the ALJ noted that Plaintiff's right kidney functioned and performed 17% of the total work. The ALJ also found significant the fact that Plaintiff has not required surgery. (R. at 34).

In consideration of the above, the ALJ determined that "the clinical and objective findings rebut [Plaintiff's] contention that she is totally disabled from all forms of gainful employment. While her perceived discomfort may restrict very strenuous physical exertion, it does not preclude all work activity." (R. at 34).

I find that the ALJ adequately and thoroughly addressed each of Plaintiff's subjective complaints and symptomology and gave specific reasons for rejecting those complaints. Furthermore, having reviewed the record, I find that the ALJ's determination that Plaintiff's claim that her symptoms prevent her from working is not entirely credible is supported by substantial evidence. Specifically, Plaintiff's reports of activity, specifically that she is able to visit outside her

9

home, attend church, engage in hobbies, perform household chores and was able to take care of her husband is sufficient evidence from which the ALJ could determine that Plaintiff's claim that she is unable to perform any work is not entirely credible. Moreover, there is substantial objective medical evidence to support the ALJ's determination. The medical records of Plaintiff's treating physicians and the consultative physicians indicate that Plaintiff's tests regarding her cardiopulmonary problems are generally normal. Additionally, the evidence indicates that Plaintiff has a full range of motion in her knee and normal strength in her wrist and fingers. The evidence also supports the ALJ's determination regarding Plaintiff's complaints of swelling and overactive bladder, as the medical records indicate that these appear to be well controlled with treatment. Furthermore, the ALJ's very extensive analysis of Plaintiff's claims of pain and other symptoms in comparison to the objective evidence clearly outline the reasons for the ALJ's credibility determination, which is supported by the evidence of record. As such, I will not reverse the ALJ's determination regarding the credibility of Plaintiff's subjective complaints.

## 2. Whether the ALJ Properly Evaluated the Opinions of Plaintiff's Treating Physicians

In regard to the ALJ's evaluation of Plaintiff's treating and examining physicians, Plaintiff argues that the ALJ failed to afford proper weight to the opinions offered by Dr. Anton, Dr. Gibson and Dr. Wass. (Docket No. 10 at 15-16).

As the finder of fact, the ALJ is required to review, properly consider and weigh all of the medical records provided concerning the claimant's claims of disability. Fargnoli v. Massanari, 247 F.3d 34, 42 (citing Dobrowolsky v. Califano, 606 F.2d 403, 406-07 (3d Cir.1979)). "In doing so, an ALJ may not make speculative inferences from medical reports." Plummer v. Apfel, 186 F.3d

10

422, 429 (citing <u>Smith v. Califano</u>, 637 F.2d 968, 972 (3d Cir.1981))."A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" <u>Morales v. Apfel</u>, 225 F.3d 310, 317 (3d Cir. 2000) (quoting <u>Plummer</u>, 186 F.3d at 429) (citations omitted). While an ALJ may reject a treating physician's assessment, he may do so "'outright only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion." <u>Id.</u> (quoting <u>Plummer</u>, 186 F.3d at 429) (citations omitted); 42 U.S.C.A. § 423(d)(1)(A). Indeed, the ALJ may not substitute his own opinions for the opinions of an examining physician. <u>Plummer</u>, 186 F.3d at 422 (citing <u>Ferguson v. Schweiker</u>, 765 F.2d 31, 37 (3d Cir. 1985)). When the medical evidence provided by a treating physician or physician conflicts with other medical evidence of record, " the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" <u>Id.</u> (citing <u>Mason v. Shalala</u>, 994 F.2d 1058, 1066 (3d Cir.1993)). Moreover, the ALJ must consider all the evidence and give some reason for dismissing the evidence he chooses to reject. <u>Id.</u> (citing <u>Stewart v. Secretary of H.E.W.</u>, 714 F.2d 287, 290 (3d Cir.1983)). 42 U.S.C.A. § 423(d)(1)(A). Finally, "[i]f a treating physician's opinion is rejected, the A.L.J. must consider such factors as the length of the treatment relationship, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record evidence, any specialization of the opining physician and other factors the plaintiff raises, in determining how to weigh the physician's opinion." <u>Sanchez v. Barnhart</u>, 388 F.Supp. 405, 412 (D. Del. 2005) (citing 20 C.F.R. § 404.1527(d)(2)-(6)).

11

####### a.    Dr. Anton

In regard to Dr. Anton's opinion that Plaintiff suffered from disabling side effects as a result of the treatment of her breast and uterine cancers, the ALJ found that these opinions were not consistent with the other medical evidence of record. (R. at 34). Specifically, the ALJ found that the opinions of Dr. Anton and his associate were rendered "in order to assist the claimant with obtaining public assistance benefits to help pay her medical bills, perhaps relaxing the meaning of 'disabled.'" (Id). Moreover, the ALJ found the opinion of Dr. Anton, that Plaintiff is disabled, to be inconsistent with the opinions of Dr. Katz. (Id). The ALJ noted that, in July 2004, Dr. Katz reported that the claimant had tolerated radiation well and again in August 2004 reported that Plaintiff had recuperated well from the effects of radiation. (R. at 35).

The ALJ also noted that Dr. Anton's opinion was not consistent with the objective medical findings of Dr. Kucera's notes from February 2005, nor was it consistent with the findings of Dr. Bahri, a treating cancer specialist, from a physical exam performed in March 2005. (R. at 35). The ALJ further considered Dr. Anton's opinion compared to that of Dr. Nolfi, a treating physician, and found it inconsistent based on Dr. Nofli's findings. He also determined that the opinion regarding congenital neutropenia was inconsistent with the medical records provided by Dr. Waas, in regard to the same. (Id). The ALJ found that Dr. Ong found only mild tremors in Plaintiff's hand, while Dr. Anton's associate found disabling tremors. (Id).

####### b.    Dr. Gibson

In regard to the opinion of Dr. Gibson, the ALJ first noted that said opinion was offered in order to assist Plaintiff in obtaining medical assistance. (R. at 35). Additionally, the ALJ compared the opinion of Dr. Gibson regarding Plaintiff's kidney reflux and asthma symptoms, to the opinions

12

of Dr. Steinbrook from June 2004, Dr. Gebrosky from February 2005 and Dr. Kucera from July 2004 and February 2005. (Id). Specifically, the ALJ determined that Dr. Gibson's opinion was inconsistent with Dr. Steinbrook's reports, indicating that Plaintiff's reflux was being maintained on antibiotics and did not require surgery. (Id). Moreover, the ALJ found that the opinion was not consistent with Dr. Gebrosky's report that Plaintiff's overactive bladder is well controlled and Dr. Kucera's opinion that Plaintiff had no significant problems with breathing. (Id).

### c.   Dr. Waas

In regard to Dr. Waas, the ALJ afforded no controlling weight to his opinion regarding Plaintiff's alleged inability to perform gross and fine manipulation and her ability to push and pull. (R. at 35). In particular, the ALJ found that these opinions were inconsistent with the findings of Dr. Catino from a physical examination performed in March 2005 and physical exminations performed by Dr. Catalano in December 205 and Dr. Waas in June 2006. (R. at 35-36).

I find that the ALJ did not err in according less weight to the opinions of three of Plaintiff's treating physicians, Dr. Anton, Dr. Gibson and Dr. Waas. The ALJ, in making such a determination, evaluated contradictory medical evidence and gave specific and detailed reasons for rejecting these opinions, based on the evidence of record. Moreover, the ALJ placed significant weight on the fact that the opinions of Dr. Anton and Dr. Gibson were offered in an attempt to assist Plaintiff in obtaining medical assistance. Additionally, there is sufficient evidence from which the ALJ could have concluded that said opinions are inconsistent with the opinions of other relevant medical records. Specifically, several of Plaintiff's treating physicians and the consultative examiners noted that, although Plaintiff has suffered a variety of health problems, treatment has been effective.

In consideration of all of the medical evidence, I find that the ALJ properly considered and

13

weighed the opinion of Plaintiff's treating physicians and gave reasons for rejecting certain opinions that are supported by the record. Therefore, Plaintiff's motion as to this issue will be denied.

### 3.    Whether Substantial Evidence Supports the ALJ's Finding at Step 3 of the Sequential Evaluation Process

Plaintiff argues that the ALJ erred in determining that Plaintiff's impairments do not meet the requirements in the Listings. Specifically, Plaintiff argues that ALJ failed to consider the cumulative effect of these disorders, in determining whether her impairments were severe or non-severe and whether they met the requirements of one of the listed impairments. (Docket No. 10 at 18). Moreover, Plaintiff argues, the medical evidence "strongly suggests" that the Plaintiff's impairments meet or equal these requirements and that the ALJ should have sought medical advice regarding the cumulative effect of these impairments. (Id).

At step two of the five step sequential analysis, the Commissioner must determine whether the claimant has a severe impairment. §404.1520(a)(4)(ii). In determining whether a claimant's alleged impairment is severe, the Commissioner considers whether the impairment or a combination of impairments significantly limits a claimant's mental or physical ability to do basic work activities. 20 C.F.R. §404.1521(a). A claimant's mental or physical ability to do basic work activities is defined as the abi lities or aptitudes necessary to do most jobs, including mental activities such as understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision and co-workers and dealing appropriately with changes in the work setting.20 C.F.R. §404.1521(b).

An impairment or combination of impairments will be considered non-severe "only if the evidence establishes a slight abnormality or a combination of slight abnormalities which have no

more than a minimal effect on an individual's ability to work." Newell v. Commissioner of Social Security, 347 F.3d 541, 546 (3d Cir. 2003) (quotations omitted). Indeed, if the claimant presents evidence of more than a slight abnormality, the severity requirement of step two is met. Id. (citing Smolen v. Chater, 80 F.2d 1273, 1290 (9th Cir. 1996)).

At step two, the ALJ determined Plaintiff has the following severe impairments: degenerative athritis and chondromalacia of the right knee with residuals of multiple arthroscopic surgical procedures and asthma/ allergic rhinitis. (R. at 23). Specifically, the ALJ determined that these impairments are not merely a slight abnormality; rather, they have a significant effect on Plaintiff's ability to engage in work activities. (Id).

With regard to Plaintiff's complaints of migraine headaches, chronic congenital neutropenia, tarsal tunnel syndrome, essential tremor in the right hand, cervical/upper trapezius strain secondary to a motor vehicle accident, history of cancer of the right breast, history of endometrial adenocarcinoma, history of degenerative arthritis of the first metatarsophalangeal joints of both feet, history of renal reflux, with atrophy of the right kidney and overactive bladder and history of basal cell carcinoma, the ALJ found that these claims have a *de minimis* effect on Plaintiff's ability to perform gainful activity on a sustained basis. As such, the ALJ determined that these impairments were non-severe within the meaning of the Social Security Regulations. (R. at 23-29).

Plaintiff argues that the ALJ's determination that these impairments are non-severe is not supported by substantial evidence. (Docket No. 10 at 3). Specifically, Plaintiff argues that the ALJ failed to take into consideration the "cumulative effects" of Plaintiff impairments in determining whether her impairments are severe or non-severe.

In determining a claimant's impairments, the Commissioner is required to consider the

combined effects of a combination of impairments. 42 U.S.C. § 1382c(a)(3)(G). The Commissioner must consider, without regard to whether any individual impairment is severe, whether the combined effects of the impairments are sufficiently severe. Id. After reviewing the record, I find that the ALJ's determination regarding these impairments is supported by substantial medical and non-medical evidence. Indeed, the ALJ evaluated each of these impairments and thoroughly examined the medical evidence and Plaintiff's own reports of the effect of these impairments. Additionally, the ALJ evaluated Plaintiff's overall ability to function daily and her reported daily activities in determining that these impairments do not have more than a minimal effect on Plaintiff's ability to do work. As the claimant, Plaintiff is required to present evidence that her diagnosed impairments significantly limit her ability to perform work activities. 20 C.F.R. §§ 404.1520(c); Ramirez v. Barnhart, 372 F.3d 546, 551 (3d Cir.2004). Aside from Plaintiff's subjective complaints, the medical records indicate that each of these impairments are either not treated, or are or have been successfully treated and/or regulated and do not significantly limit Plaintiff's ability to perform work activities. Moreover, Plaintiff's own reports of daily activity indicate that Plaintiff is not significantly limited by these impairments.

Furthermore, the ALJ did not deny Plaintiff's application at this stage of the sequential analysis. Rather, the ALJ determined that several of Plaintiff's impairments were severe and, therefore, found in Plaintiff's favor at this step. As such, regardless of whether the ALJ improperly determined that specific impairments are non-severe, the error is harmless, insofar as the sequential evaluation process proceeded to the third step. See Kreuzberger v. Astrue, Civil Action No. 07-529, 2008 WL 2370293 at *7 (W.D. Pa. June 9, 2008).

At step three of the sequential evaluation process, the ALJ must determine whether a

claimant's severe impairments meet or medically equal the criteria for an impairment found in 20 C.F.R., part 404, subpart p, Appx. 1. §404.1520(a)(4)(iii).

In determining whether an impairment meets or medically equals a listed impairment, the ALJ must specify which listings potentially apply and give reasons why those listings are not met or equaled. Burnett v. Commissionerr of Soc. Sec., 220 F.3d 112, 119-20, 120 n. 2 (3d Cir.2000). An ALJ must clearly evaluate the "available medical evidence in the record and then [set] forth that evaluation in an opinion, even where the ALJ did not identify or analyze the most relevant listing." Scatorchia v. Commissioner of Soc. Sec., 137 F. Appx. 468, 471 (3d Cir.2005).

At this step, the ALJ determined that Plaintiff's severe impairments, i.e.degenerative arthritis and chondromalacia of the right knee with residuals of multiple arthroscopic surgical procedures and asthma/allergic rhinitis, do not "contain the objective signs, symptoms or findings or the degree of functional limitations necessary to meet or equal the severity" of any of the Listings. (R. at 29). Specifically, the ALJ determined, based on several physical examinations performed by Dr. Catalano, Dr. Ong, Dr. Steinbook, Dr. Bahri and Dr. Waas, that Plaintiff's symptoms and the objective medical evidence indicate that Plaintiff's impairments do not meet the criteria set forth in either 1.00 Musculoskeletal System or 3.00 Respiratory System or any other listed impairment. (Id).

Plaintiff argues that, like the ALJ's determination at step two, the determination at step three is not supported by substantial evidence because the ALJ did not properly take into account the "cumulative effects" of Plaintiff's impairments when determining whether the impairments, either alone or in combination, are equivalent to a listed impairment. (Docket No. 10 at 18). Again, the ALJ considered the objective medical findings in regard to each of these severe impairments and found that the medical findings and Plaintiff's symptoms did not meet the requirements in these listings.

17

I find, again, that the medical evidence of record supports this determination. Specifically, Plaintiff's impairments do not meet the requirements of Listing 1.04 Disorders of the Spine. As the ALJ correctly notes, the medical evidence shows no evidence of nerve root compression. Additionally under Listing 6.02 Impairment of Renal Function a claimant's impairments must include: Chronic hemodialysis or peritoneal dialysis, kidney transplantation or persistent elevation of serum creatinine. Based on the medical evidence, there is not substantial evidence to support a finding of any of these symptoms. Moreover, the medical evidence does not support a finding that Plaintiff's impairments meet Listing 13.10 Breast. Indeed, the medical evidence indicates that Plaintiff had no recurrent carcinoma, no recurrent mass and no evidence of malignancy. Furthermore, the medical evidence indicates that, post- mastectomy, Plaintiff had no symptoms of breast cancer. Because the ALJ properly formulated his reasons for determining that Plaintiff's impairments do not meet or equal a listing, his decision will be affirmed.

## 4. Whether Substantial Evidence Supports the ALJ's Finding at Step 5 of the Sequential Evaluation Process

At step five of the sequential evaluation process, the Commissioner must determine whether Plaintiff can perform work that exists in the national economy, based on her residual functional capacity. §404.1520(a)(4)(v). Here, the ALJ determined that Plaintiff has the residual functional capacity to perform light work.[1] Specifically, the ALJ determined, based on the medical evidence

---

[1]      "Light" work is work that involves:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a fully or wide range of light work,

18

and Plaintiff's reported activity level, that she has the capacity to do work that does not require lifting or carrying more than ten pounds frequently or twenty pounds occasionally, occasional climbing of ramps and stairs, any climbing of ladders, any pushing or pulling with the lower right extremity, including operating foot pedals or exposure to noxious fumes, dusts, gases, extreme wetness or humidity. (R. at 29-30).

Plaintiff argues that the ALJ's determination regarding Plaintiff's residual functional capacity is not supported by substantial evidence. (Docket No. 10 at 19-20). Specifically, Plaintiff argues that the ALJ erred by failing to consider the combined effects of Plaintiff's severe and non-severe impairments on her limitations. (Docket No. 10 at 20-21).

"'Residual Functional Capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" Fargnolii, 247 F.3d at 40 (quoting Burnett v. Commissioner of Social Security, 220 F.3d 112, 121 (3d Cir. 2000)) (quotations omitted); 20 C.F.R. §404.1525(a)(1). In determining a claimant's RFC, all of the claimant's impairments, including those not considered "severe" must be considered. 20 C.F.R. §404.1545(a)(2). Additionally, the ALJ is required to consider all of the evidence before him- including both the medical evidence and the claimant's subjective complaints and evidence of activity level- in making a determination regarding a Plaintiff's RFC. Burnett, 220 F.3d at 121 (citing Plummer, 186 F.3d at 429; Doak v. Heckler, 790 F.2d 26, 29 (3d Cir. 1986)). See also Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983); Fargnoli v. Massanari, 247 F.3d 34, 41 (3d. Cir.2001) (holding that the ALJ

---

you must have the ability to do substantially all of these activities.

20 C.F.R. §404.1567(b).

must consider all evidence including "medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others").

In this case, the ALJ properly considered Plaintiff's severe impairments in determining her residual functional capacity. Specifically, the ALJ considered Plaintiff's history of meniscal tear, degenerative arthritis and chondromalacia of the right knee and that she has had multiple arthroscopic surgical procedures. (R. at 30). Additionally, the ALJ considered the limitations from Plaintiff's asthma/allergic rhinitis. (R. at 29-30). The ALJ also evaluated Plaintiff's subjective complaints and the treatments she receives for all of her impairments, both severe and non-severe. (R. at 32). The ALJ also considered Plaintiff's claims regarding her tremors, cardiac impairments, chronic swelling and kidney problems. I find Plaintiff's argument, that the ALJ failed to consider all of Plaintiff's impairments, both severe and non-severe, unpersuasive, as the ALJ did factor in all of Plaintiff's impairments in his determination. (R. at 31-36). Additionally, the ALJ considered Plaintiff's reports and subjective complaints and, as discussed above, gave adequate reasons for rejecting Plaintiff's claim that her symptoms are debilitating. As discussed above, there is substantial evidence in the record to support the ALJ's determination regarding Plaintiff's complaints. Furthermore, there is substantial evidence to support the ALJ's determination, based on the reports of Plaintiff's treating physicians and her own reports of daily functioning, to support the ALJ's determination regarding Plaintiff's residual functional capacity. Therefore, the ALJ's determination will be affirmed.

## V.    Conclusion

Based on the foregoing, Plaintiff's motion for summary judgment is denied and Defendant's

20

motion for summary judgment is granted. An appropriate order follows.

By the court,

s/ Donetta W. Abrose
Donetta W. Ambrose,
Chief United States District Judge

Dated: April 30, 2009

cc:    All counsel of record.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WANDA BOSICH,                              )
                                           )
              Plaintiff,                   )        Civil Action No. 08-783
                                           )
       v.                                  )
                                           )
MICHAEL J. ASTRUE, COMMISSIONER            )
OF SOCIAL SECURITY                         )
              Defendant.                   )


AMBROSE, Chief District Judge.

## ORDER

AND now, this 30th day of April, 2009, for the reasons set forth in the accompanying opinion,

it is hereby ordered that Plaintiff's Motion for Summary Judgment (Docket No. 9) is denied and

Defendant's Motion for Summary Judgment (Docket No. 11) is granted.

                                    By the court,

                                    s/ Donetta W. Abrose
                                    Donetta W. Ambrose,
                                    Chief United States District Judge


Dated: April 30, 2009

cc:    All counsel of record.